**GEOVISION, INC.,**
**Plaintiff–Counter–Defendant–Appellant,**

v.

**GEOVISION CORPORATION and Geovision Systems, Inc., Defendants–Counter–Claimants–Appellees.**

No. 90–8356.

United States Court of Appeals, Eleventh Circuit.

April 11, 1991.

Robert H. McKnight, Atlanta, Ga., for plaintiff, counter-defendant-appellant.

Virginia S. Taylor, Kilpatrick & Cody, Atlanta, Ga., Arthur I. Neustadt, David J. Kera, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, Va., for defendants, counter-claimants-appellees.

Before ANDERSON and CLARK, Circuit Judges and TUTTLE, Senior Circuit Judge.

ANDERSON, Circuit Judge:

In this trademark infringement action, plaintiff-appellant Geovision, Inc. ("Appel-

lant") appeals from a jury verdict in favor of defendant-appellees Geovision Corporation and Geovision Systems, Inc. ("Appellees"). Appellant is a designer of software that allows personal computers to display geographical information in the form of maps. Appellees are also in the business of designing computer systems that allow for computer access to geographical information, mostly for use by customers such as municipalities and utilities. Although the two companies are not in exactly the same line of business, they are sufficiently close for the jury to have found that use of the name "Geovision" by both created a likelihood of confusion.

Although the jury found that use of the name "Geovision" by both parties was likely to cause confusion, the jury also found that Appellant did not have priority of use with regard to such trademark.[1] Appellant argues that the jury's finding as to priority was tainted because the district court erred by giving the jury a special interrogatory that established January 9, 1986, as the date on which Appellees first used the name "Geovision" in interstate commerce.[2] Appellant also argues that the district court erred by responding to the jury's query regarding the meaning of the term "sale" with a supplemental instruction defining a "sale" as the passing of title from seller to buyer.[3] We conclude that appellant's challenges on appeal are without merit and we therefore affirm in all respects.

■ With regard to Appellant's first argument, we cannot agree that jury inter-

rogatory 2 was improper when Appellant itself gave January 9, 1986 as the date that Appellees first used the trademark in interstate commerce. In the pretrial order, Appellant stated the legal issue to be tried as follows: "Was Plaintiff GEOVISION, Inc. using the name 'GEOVISION' in interstate commerce prior to January 9, 1986." Pretrial Order, at 5(a). Also in the pretrial order, Appellant stated that Appellees' "first sale under the name of Geovision occurred on January 9, 1986." Pretrial Order Attachment C at 2. In its opening statement at trial, Appellant again gave January 9, 1986 as the date that Appellees first sold goods under the trademark "Geovision." R2–31. Finally, when the district court proposed the jury interrogatory, not only did Appellant state no objection, R6–823, R7–828, but also complimented the court on doing an "excellent job." R7–826.

It was not until after the jury left the courtroom to commence deliberations that Appellant made even a vague objection to the interrogatory. At that time, Appellant said "I really wonder why the language 'prior to January 9, 1986' is in there ...," to which the court replied, "because that's the position you adopted in the pretrial order...." R7–905. This untimely and vague objection is not sufficient to persuade us that the district court abused its discretion in holding Appellant to the pretrial order and its other statements that January 9, 1986 was the appropriate date.

■ Appellant next argues that the district court erred by giving the jury a sup-

---

1. Appellees filed a counterclaim in conjunction with their answer seeking to enjoin Appellant from further use of the name. However, the counterclaim was apparently neither pursued in the district court nor on appeal.

2. Jury Interrogatory 2 requested a yes or no response to the following question:
   Prior to January 9, 1986 did the plaintiff in the regular course of business make a bona fide sale or delivery of one of its products in interstate commerce that had attached or affixed to the products or the product's containers or wrappings, tags and labels the mark "GEOVISION"?

3. The district court's supplemental instruction relied on the Georgia Uniform Commercial

Code, O.C.G.A. §§ 11–2–106(1) and 11–2–401(2) and provided as follows:

Now, Ladies and Gentlemen of the jury, a sale consists in the passing of title from the seller to the buyer for a price. Unless otherwise agreed, title passes to the buyer at the time and the place at which the seller completes his performance with reference to the physical delivery of the goods.

If the contract requires or authorizes the seller to send to the buyer but does not require him to deliver goods at a destination, title passes to the seller at the time and place of shipment. But if the contract requires delivery at destination, title passes on delivery at destination.

plemental instruction defining the term "sale" as the passing of title from seller to buyer. Appellant argues that this definition erroneously "omitted the definition of a 'present sale' that is defined in O.C.G.A. § 11–2–106(1) as ... a sale which is accomplished by the making of a contract." Brief of Appellant at 35–36. Appellant wanted this definition added to the instruction because it alleges that, at the least, it used the trademark in a contract of sale prior to January 9, 1986.

15 U.S.C. § 1127 provides, in pertinent part:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce
>
> . . . .

Although there is a dearth of authority regarding the meaning of the words "sold or transported" in § 1127, we conclude that an unperformed contract of sale is insufficient to constitute the use of a mark in commerce. The plain meaning of § 1127 requires that the mark be placed on the product (or on the associated documents if the nature of the product makes that impracticable) and that the product be sold or transported in commerce. Thus, the statutory term "sold" obviously contemplates a product with the mark on it. Therefore, a mere contract of sale without a product and mark is not within the statutory meaning of a sale.[4] To constitute "a *bona fide* sale of the trademarked products in interstate commerce[, ... t]he products bearing the mark should be shipped, mailed, or otherwise sent ... in the ordinary course of trade in effecting a sale." 1 J. Gilson, *Trademark Protection & Practice* § 3.02[2], at 3–34 (1990).

Our conclusion that a mere contract of sale is not sufficient rejects appellant's only challenge to the supplemental "sale" instruction. Thus, we need not, and do not, elaborate further on the meaning of the statutory term, "sold."

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[5]

---

**4.** Contrary to Appellant's assertions, *Taunton v. Allenberg Cotton Co., Inc.,* 378 F.Supp. 34, 39 (N.D.Ga.1973), did not hold that a contract for sale is equivalent to a sale under Georgia law. Rather, *Taunton* stated only that "[i]t is clear under the Georgia Law that a contract to sell, *as distinguished from an actual sale,* can relate to a commodity which is not in existence at the time the contract is executed." (emphasis added).

**5.** Appellant's other arguments are without merit and warrant no discussion.